UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                                                           ) | Criminal No. 18-10266-NMG |
| ) | |
| DANTE STARKS, a/k/a "Tay"            ) | |
|     Defendant.                                 ) | |

**TRIAL BRIEF OF THE UNITED STATES**

The United States, by its undersigned attorneys, respectfully submits this trial brief to identify relevant issues regarding the trial, which is scheduled to begin on October 7, 2019.

    **I.**    **SUMMARY OF GOVERNMENT'S CASE**

On August 15, 2018, a grand jury in this district returned an indictment charging Dante Starks, a/k/a "Tay", with one count of distributing cocaine on or about July 5, 2018.

This indictment arose from a gang investigation in Brockton and Boston by the FBI in 2018, dubbed "Operation Landshark." The investigation utilized cooperating witnesses to make consensual recordings and controlled purchases of drugs and guns. This case involves a single controlled buy by CW-1 from Dante Starks.

Prior to the controlled buy in this case, agents first searched the CW and its car for money or contraband, provided the CW with a recording device and monitor, outfitted the car with audio/video recording equipment, and provided the CW with a set amount of Official Government Currency ("OGC") to make the purchase. After the buy, agents searched the CW and its car, and retrieved the drugs and recording devices.

1

### *COUNT 1: July 5, 2018 Distribution of Cocaine*

On July 5, 2018, at 1:22 p.m.,[1] CW-1 made a consensually recorded telephone call to "Tay" at telephone number 857-417-0385.  CW-1 asked if Tay "was in the neighborhood" and "could see [him] with something," which was a request for drugs.  Tay said that "he got [him]."

At approximately 4:41 p.m., CW-1 received an incoming call from Starks.  CW-1 and the defendant agreed to meet at the Wendy's on Oak Street in Brockton to complete the transaction.  This call was not recorded.

Agents searched CW-1 and CW-1's vehicle for money and contraband with negative results, provided $700 in funds to CW-1, and directed CW-1 to meet the defendant and purchase 14 grams of cocaine.

Agents surveilled CW-1 to the area of Wendy's at 660 Oak Street, Brockton, where he arrived at 4:56 p.m.  At 4:57 p.m., CW-1 received an incoming call from STARKS.  CW-1 then informed agents that the defendant would be there in "five minutes."  At approximately 5:01 p.m., CW-1 received another incoming call from the defendant, who instructed CW-1 to go Pine Estates and park "all the way back."

Agents surveilled CW-1 to the area of Pine Estates, 469 Pine Grove Drive, Brockton, where he arrived at 5:05 p.m.  According to the video recording, at 5:07 p.m., the defendant entered the front passenger seat of CW-1's car.  The defendant reached into his right pocket, removed an item which looked like a plastic bag, and passed it to CW-1.  CW-1 asked how much and the defendant said "give me uh, $550."  CW-1 asked if the defendant had $10, gave STARKS $560 in OAF, and received $10 in change from STARKS's left pocket.  Before the

---

1 All times approximate.

defendant could get out, CW-1 appeared to show the drugs to the defendant and asked about them.  At 5:08 p.m., the defendant got out of CW-1's vehicle.

As he was driving away, CW-1 told law enforcement that the defendant was driving a black SUV.  Agents surveilled a black male in a black Nissan Rogue, MA Reg. 8TZ583, registered to Sullivan Bros. Nissan, Inc.[2]  Agents saw the black male counting money.

CW-1 met the FBI at the prearranged location, where agents searched CW-1 and CW-1's vehicle for money and contraband with negative results.  CW-1 gave the agents $150 in funds and a clear plastic bag, which contained 14 grams of a white powder substance.  Using a TruNarc Raman Spectrometer, agents field-tested the powder, which tested positive for the presumptive presence of cocaine.

On July 24, 2018, an agent, who did not participate in the controlled buy, administered an eight-picture photographic array to CW-1.  CW-1 identified the defendant as "Tay," the person from whom he bought cocaine from on July 5, 2018.

The white powder substance was submitted to the DEA Northeast Laboratory, which concluded that it was 13.921 gram of cocaine hydrochloride.

Also following the controlled buy, agents and detectives familiar with the defendant reviewed the video and surveillance photographs and identified the defendant on the video.  The government will offer such testimony at trial.

---

2 The government obtained the rental agreement from Sullivan Bros. Nissan, which show that the defendant rented that car. The government will offer the agreement into evidence.

## II.     [PROPOSED] STIPULATIONS OF FACT

The government will provide the defendant with a proposed stipulation of fact regarding the drugs in this case. If the parties agree to any stipulations, they will alert the Court.

## III.    ANTICIPATED EVIDENTIARY ISSUES

### A.  Authentication of Business Records

The government hereby provides notice to defendants and the Court that it intends to authenticate certain business records, including the rental agreement from Sullivan Bros. Nissan in the defendant's name, pursuant to Fed. R. Evid. 902 (11) by a written declaration of a qualified person.

### B.  Consensual Recordings

The government intends to introduce consensually-monitored recordings of telephone calls and the meeting between CW-1 and the defendant, described above.

Federal Rule of Evidence 901(b)(5) permits sound recordings to be introduced through a witness who has "heard either firsthand or though mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker."   The government will introduce evidence that each recording is an accurate reproduction of the events involved, either from a participant in the conversation or from a witness able to testify that the equipment used to both record and play the recording are in good working condition and that the recording was stored securely to prevent tampering.   The government will also offer testimony identifying the voices on each recording.   Any person may identify the voices on a recording if that person has heard the voices at any time.   Participants in the conversation and agents involved in the recording are competent to identify voices in a

recording.

The recorded conversations were partially or wholly in English. The government has prepared transcriptions to assist the jury while the recordings are being played. The government has provided drafts of all transcripts prepared to date to the defense. The government expects to provide its final versions of the excerpted transcripts to defense counsel prior to the beginning of trial. Absent stipulations on this issue, the government will offer testimony at trial that the transcripts are true and accurate.

The government intends to offer such statements as admissions of the defendant under Federal Rule of Evidence 801(d)(2)(A).

### C. Statement of Prior Identification

The government intends to introduce the prior statement of identification made by CW-1, including the statements and photo array from which the statement was drawn.   Pursuant to Fed.R.Evid. 801(d)(1)(C), these statements are not hearsay.

### D. Expert testimony.

The government intends to introduce evidence from DEA Senior Forensic Chemist **Ada Kong** regarding the analysis she performed on the FBI exhibit, her conclusion that it is cocaine, and that the net weight is 13.921 grams.   She will base those conclusions on the testing procedures set forth in laboratory documents previously disclosed to defense counsel.

## IV. JURY VOIR DIRE QUESTIONS

Consistent with the Court's order at the initial pretrial conference, the government will submit voir dire questions no later than one week prior to trial.

V.     **PROPOSED JURY INSTRUCTIONS**

Consistent with the Court's order at the initial pretrial conference, the government will submit proposed jury instructions no later than two weeks prior to trial.

VI.     **LENGTH OF TRIAL**

The government anticipates calling as witnesses S/A Timothy Kenny, the CW, and an additional agent or agents who performed surveillance. In addition, depending on whether the government and defendant enter stipulations of fact, the government may call the chemist. Among other things, the government anticipates offering as exhibits the audio/video recording of the controlled buys, still photographs from that recording, and the audio recordings of a consensually monitored call. In total, the government expects its case-in-chief to last no more than three days.

VII.     **SPECIAL ARRANGEMENTS**

The government is not making any requests for special arrangements for trial at this time. As the court is aware, the government expects to offer the testimony of Senior Forensic Chemist Ada Kong, who work in New York. Depending on the actual progress of the trial and travel schedules and family obligations, the government may request that she be allowed to testify out of order.

The government will consult with court personnel to ensure that the format of its discs will be compatible with the courtroom's facilities. The government also anticipates that it may refer to certain charts or photographs (which will require the use of an easel) during its opening statement. The government will address those issues with defense counsel and the Court prior to trial.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: */s/ Timothy E. Moran*
TIMOTHY E. MORAN
PHILLIP MALLARD
Assistant U.S. Attorneys

Dated: September 16, 2019

CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Timothy E. Moran*
TIMOTHY E. MORAN
Assistant United States Attorney

Dated: September 16, 2019